## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TOUSIANT F. SPRATLEY, an individual<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY STATE POLICE,<br>TPR. T.J. ANDERSON (#7961), in his individual and official capacity,<br>TPR. S.M. BECK (#7827), in his individual and official capacity,<br>TPR. S.R. NICKELS (#8339), in his individual and official capacity,<br>SGT. T.K. O'CONNOR (#6999), in his individual and official capacity, and<br>COL. PATRICK J. CALLAHAN, in his individual and official capacity,<br><br>Defendants. | Civil Action No.: 1:22-cv-04586<br><br><br><br>**COMPLAINT<br>AND JURY DEMAND** |

Plaintiff TOUSIANT F. SPRATLEY, by and through his undersigned counsel, by way of Complaint, hereby alleges against Defendants NEW JERSEY STATE POLICE, TPR. T.J. ANDERSON (#7961), TPR. S.M. BECK (#7827), TPR. S.R. NICKELS (#8339), and SGT. T.K. O'CONNOR (#6999) as follows:

### LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Tousiant F. Spratley
252 Crescent Avenue
Gibbstown, New Jersey 08027

New Jersey State Police,
Tpr. T.J. Anderson (#7961),
Tpr. S.M. Beck (#7827),
Tpr. S.R. Nickels (#8339),
Sgt. T.K. O'Connor (#6999), and

1

Col. Patrick J. Callahan (Superintendent)
New Jersey State Police
P.O. Box 7068
West Trenton, NJ 08628

## PARTIES, JURISDICTION, AND VENUE

1.      At all times relevant herein, Plaintiff TOUSIANT F. SPRATLEY, is an adult resident

citizen of the City of Gibbstown, State of New Jersey, and is a citizen of the United States.

2.      At all times relevant herein, Defendant, NEW JERSEY STATE POLICE, is a State law

enforcement agency, administrative division, and/or department, that is part of, and operated by,

the State government of the State of New Jersey, and is otherwise known as the New Jersey State

Police and/or the New Jersey State Troopers.

3.      At all times relevant herein, Defendant, TPR. T.J. ANDERSON (#7961) ("Trooper

Anderson") is, upon information and belief, a citizen of the United States and is a law enforcement

officer within the jurisdiction of the State of New Jersey and is employed as such by the State of

New Jersey, specifically, by Defendant NEW JERSEY STATE POLICE, in the New Jersey State

Police, i.e., the New Jersey State Troopers. At all times relevant to this action, Trooper Anderson

was acting under the color of state law and was acting within the course and scope of his

employment as a Trooper with the New Jersey State Police.

4.      At all times relevant herein, Defendant, TPR. S.M. BECK (#7827) ("Trooper Beck") is,

upon information and belief, a citizen of the United States and is a law enforcement officer within

the jurisdiction of the State of New Jersey and is employed as such by the State of New Jersey,

specifically, by Defendant NEW JERSEY STATE POLICE, also known as, the New Jersey State

Troopers. At all times relevant to this action, Trooper Beck was acting under the color of state law

and was acting within the course and scope of his employment as a Trooper with the New Jersey

2

State Police.

5.      At all times relevant herein, Defendant, TPR. S.R. NICKELS (#8339) ("Trooper Nickels") is, upon information and belief, a citizen of the United States and is a law enforcement officer within the jurisdiction of the State of New Jersey and is employed as such by the State of New Jersey, specifically, by Defendant NEW JERSEY STATE POLICE, in the New Jersey State Police, i.e., the New Jersey State Troopers. At all times relevant to this action, Trooper Nickels was acting under the color of state law and was acting within the course and scope of his employment as a Trooper with the New Jersey State Police.

6.      At all times relevant herein, Defendant, SGT. T.K. O'CONNOR (#7961) ("Sergeant O'Connor") is, upon information and belief, a citizen of the United States and is a law enforcement officer within the jurisdiction of the State of New Jersey and is employed as such by the State of New Jersey, specifically, by Defendant NEW JERSEY STATE POLICE, in the New Jersey State Police, i.e., the New Jersey State Troopers. At all times relevant to this action, Sergeant O'Connor was acting under the color of state law and was acting within the course and scope of his employment as a Sergeant with the New Jersey State Police.

7.      At all times relevant herein, Defendant, COL. PATRICK J. CALLAHAN ("Superintendent Callahan") is, upon information and belief, a citizen of the United States and is a law enforcement officer within the jurisdiction of the State of New Jersey and is employed as such by the State of New Jersey, specifically, by Defendant NEW JERSEY STATE POLICE, in the New Jersey State Police, i.e., the New Jersey State Troopers. At all times relevant to this action, Superintendent Callahan was acting under the color of state law and was acting within the course and scope of his employment as a Colonel with the New Jersey State Police.

8.      This is a civil action for money damages brought pursuant to 42 U.S.C. §1983 and the

Fourth Amendment of the United States Constitution.

9.      This Court has original jurisdiction over Plaintiff's claims as alleged herein, pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343(3) (civil rights).

10.      Additionally, the Court has supplemental jurisdiction over Plaintiff's causes of action arising under New Jersey State law, pursuant to 28 U.S.C. § 1367.

11.      Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred pursuant to 42 U.S.C. §1988.

12.      Venue is appropriate in the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), as all Defendants are believed to reside within the State of New Jersey, the state in which this District is located, and further, a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within said District.

## GENERAL ALLEGATIONS

13.      On the night of Tuesday, March 9, 2021, Plaintiff, TOUSIANT F. SPRATLEY, was operating a white Chevrolet Silverado southbound on Route 42, when in the area of milepost 12.4 in Deptford Township, Gloucester County, Plaintiff was subjected to a traffic stop by Defendant Trooper Anderson, resulting in Plaintiff pulling the vehicle over to the shoulder of the road.

14.      Shortly after Defendant Trooper Anderson effectuated the traffic stop at approximately 11:45PM on March 9, 2021, he was joined at the scene of the stop by Defendant Troopers Beck and Nickels and Defendant Sergeant O'Connor.

15.      Defendant Trooper Anderson approached Plaintiff from the passenger-side window of Plaintiff's vehicle and informed Plaintiff that he was being pulled over as Defendant Trooper Anderson observed Plaintiff operating the vehicle in an erratic manner.

16.      Defendant Trooper Anderson instructed Plaintiff to exit the vehicle as he would be

4

performing a series of field sobriety tests on Plaintiff.

17.     On the southbound shoulder of Route 42, Defendant Trooper Anderson administered to Plaintiff a Horizontal Gaze Nystagmus (HGN) exam, a walk and turn test, and a one leg stand test.

18.     After the administration of these tests by Defendant Trooper Anderson, Defendant Trooper Anderson determined that he would place Plaintiff under arrest.

19.     As such, Defendant Trooper Anderson instructed Plaintiff to turn around and place his hands behind his back as he under arrest for driving while intoxicated pursuant to N.J.S.A. 39:4:50.

20.     Plaintiff, refuting Defendant Trooper Anderson's conclusion that he was intoxicated, resisted somewhat in placing his hands behind his back and allowing himself to be handcuffed.

21.     As a result of Defendant Trooper Anderson's struggle to get Plaintiff handcuffed successfully, Defendant Troopers Beck and Nickels and Defendant Sergeant O'Connor came to assist Defendant Trooper Anderson.

22.     Although Plaintiff passively resisted being handcuffed, at no time did Plaintiff became violent with any of the Defendants, nor did Plaintiff threaten violence upon any of the Defendants.

23.     In fact, throughout the stop, Plaintiff remained quite respectful towards all Defendants.

24.     Even so, Defendants collectively took Plaintiff forcefully down to the ground.

25.     At this point, careful examination of the body cam footage from the Defendants becomes critical and will be referred to in examining the sequence of events that followed.

26.     The footage bearing identifying designation "Axon Body 3 X6039927H" is believed to be the body cam footage of Defendant Trooper Anderson.

27.     The footage bearing identifying designation "Axon Body 3 X603992SA" is believed to be the body cam footage of Defendant Sergeant O'Connor.

28.     Beginning at approximately time stamp 2021-03-10 00:02:40 Defendants' take-down of

Plaintiff is visible on Defendant Trooper Anderson's body cam footage.

29.     At approximately 03:19 on Axon Body 3 X6039927H (Anderson's), a Defendant Trooper is heard telling Plaintiff to "Stop fucking around and put your hands behind your back."

30.     Most clearly visible in the body cam footage from Axon Body 3 X603992SA believed to be that of Defendant Sergeant O'Connor, from approximately time stamp 00:02:49 to 00:02:52, a Defendant other than Defendant Sergeant O'Connor (from whose perspective the footage is captured) is shown savagely punching Plaintiff in the face at least five (5) times in quick succession, with the Defendant Trooper winding up after each punch.

31.     The impact of each punch was such that the repeated contact of the Defendant Trooper's fist with the Plaintiff's skull made an audible "thud" that was picked up by the by Axon Body 3 X603992SA.

32.     As visible in the body cam footage, at no point did the other Defendants attempt to stop the Defendant Trooper who was repeatedly punching Plaintiff in the head.

33.     At approximately time stamp 00:02:55, Plaintiff is heard exclaiming, "Oh my god, you punched me in my fucking head!"

34.     At approximately time stamp 00:04:39, Plaintiff is heard saying to the Defendant Troopers, "You punched me in my fucking face for no reason. I did nothing to none of y'all."

35.     One of the Defendants is then heard saying in response at approximately 00:04:45, "Well, you resisted," suggesting that the punches to Plaintiff's face were justified.

36.     Bear in mind, Plaintiff was already pinned on the ground with his head pressed into the dirt at the time he was repeatedly punched by one of the Defendant Troopers.

37.     After Plaintiff was placed in the back of Defendant Trooper Anderson's police vehicle, at approximately 00:06:38, Plaintiff is heard asking the Defendants which one of them punched him

in the face.

38.     At approximately 00:06:39, one of the Defendant Troopers answers, "That was me."

39.     Judging from the audio on the body cam footage from both Axon Body 3 X603992SA (being that of Defendant Sergeant O'Connor) and Axon Body 3 X6039927H (being that of Defendant Trooper Anderson), it does not sound as though the "That was me," reply was voiced by either O'Connor or Anderson.

40.     Plaintiff therefore believes it was either Defendant Trooper Beck or Defendant Trooper Nickels depicted in the body cam footage savagely punching Plaintiff repeatedly in the face and then admitting to same as alleged.

41.     Interestingly, both the "New Jersey State Police Drinking Driving Report" and the "New Jersey State Police Investigation Report" generated in connection with the arrest neglect to mention the excessive force exerted upon Plaintiff vis-à-vis the repeated punches to Plaintiff's head by one of the Defendant Troopers, with both reports merely stating that, use of physical force was needed "in order to gain compliance" and effect the arrest.

42.     Later in the body cam footage from Defendant Trooper Anderson (Axon Body 3 X6039927H), Plaintiff is heard conversing with Defendant Trooper Anderson as he drove Plaintiff to the police station.

43.     Beginning at approximately 00:15:36 on Axon Body 3 X6039927H, the following exchange between Plaintiff and Defendant Trooper Anderson can be heard:

Plaintiff:     "I didn't deserve to get punched in my face, bro... You didn't do it.
                I know you didn't do it. I know you didn't do it. I know you didn't
                – you was trying to be respectful as possible -"

Anderson:   "I know, but... but listen, when I tell you you're under arrest, you

gotta... you gotta listen."

44.     As with the prior "Well, you resisted," remark from one of the Defendants, Defendant Trooper Anderson's response to Plaintiff in the aforecited exchange demonstrates a belief in Defendant Trooper Anderson, as well as in the other Defendants, that the excessive and brutal force exercised upon Plaintiff by one of Anderson's fellow Troopers was actually justified in Plaintiff's specific instance, and further, that similar uses of excessive force can be warranted whenever a would-be arrestee resists, regardless of whether or not the arrestee was the aggressor.

45.     Not once does Defendant Trooper Anderson admit to Plaintiff that his fellow Trooper's conduct was excessive or inappropriate; rather, he reinforces that said excessive force was permissible.

46.     Following Defendant Trooper Anderson taking Plaintiff to the State Police Road Station in Bellmawr, while being processed by the officers, Plaintiff began complaining of chest pains.

47.     Emergency medical services were subsequently called, and Plaintiff was transported to Cooper University Hospital for further evaluation.

48.     Plaintiff was subsequently diagnosed with symptoms consistent with physical assault, acute pain of the right knee, and chest pain, and Plaintiff was instructed to follow-up with a physician or report to the emergency department if his symptoms worsened.

49.     Plaintiff did, in fact, subsequently follow up with a physician, Dr. Rajan Gupta, M.D., who diagnosed Plaintiff with significant neurological pathologies causally related to the assault by the Defendants herein.

50.     Specifically, Plaintiff was diagnosed with, among other things, C2-3 through C6-7 disc bulging and a C5-6 broad central protrusion type disc herniated with flattening of the anterior spinal cord and mild narrowing of the central foraminal canal, resulting in 5-6 C4-5/C5-6 cervical

radiculopathy and L4-5/L5-S1 lumbar radiculopathy.

51.    As a result of the injuries Plaintiff sustained at the hands of the Defendants, Plaintiff has undergone the following:

a.   Bilateral L5-S1 transforaminal epidural steroid injection (TESI) on April 13, 2021;

b.   Bilateral C4-5 transforaminal epidural steroid injection (TESI) on April 22, 2021;

c.   Second bilateral L5-S1 TESI on May 11, 2021;

d.   Second bilateral cervical TESI – this time at C5-6 – on May 25, 2021;

e.   Third cervical TESI, left-sided, at C4-5/C5-6 on June 22, 2021;

f.   Third lumbar bilateral L5-S1 TESI on July 15, 2021; and

g.   Percutaneous electrical nerve stimulation (PENS) therapy on September 23, 2021.

52.    Despite these significant medical interventions, Plaintiff continues to suffer substantial pain and limitation in his activities of daily living (ADLs) and will likely continue to suffer same for the foreseeable future, but-for further and/or more invasive medical intervention such as surgery, given that Plaintiff's spinal injuries are permanent in nature.

**COUNT I**
**42 U.S.C. § 1983 – FOURTH AMENDMENT**
**EXCESSIVE FORCE**
**As To Defendants Tpr. T.J. Anderson (#7961), Tpr. S.M. Beck (#7827), Tpr. S.R. Nickels (#8339), and Sgt. T.K. O'Connor (#6999)**

53.    Plaintiff, TOUSIANT F. SPRATLEY, realleges and incorporates by references all paragraphs contained in the Complaint thus far above, as if fully stated herein.

54.    Plaintiff makes a claim under 42 U.S.C. § 1983 for violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

55.    42 U.S.C. § 1983 provides in relevant part that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia

9

> subjects or causes to be subjected any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges or immunities secured by the constitution and law
> shall be liable to the party injured in an action at law, suit in equity,
> or other appropriate proceeding for redress . . .

56.     At all times relevant to the allegations in this Complaint, Defendants TPR. T.J. ANDERSON (#7961), TPR. S.M. BECK (#7827), TPR. S.R. NICKELS (#8339), and SGT. T.K. O'CONNOR (#6999), were acting under color of State law, and within the course and scope of their official duties and employment in their capacity as Troopers with Defendant NEW JERSEY STATE POLICE ("NJ State Troopers").

57.     The Defendants named in this Count are "persons" under 42 U.S.C. §1983.

58.     Under the Fourth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment, Plaintiff has a clearly established constitutional right to be secure in his person as against unreasonable seizures and the use of excessive force by law enforcement officers, such as the herein named Defendants.

59.     Nonetheless, the herein named Defendants, jointly and severally, deprived Plaintiff of clearly established rights secured to him under the United States Constitution, namely, the Fourth Amendment rights to be free from unreasonable seizures and to be free from the use of excessive force against one's person.

60.     Plaintiff was pulled over for a for erratic driving and charged with driving while intoxicated (DWI) pursuant to N.J.S.A. 39:4:50. Importantly, DWI in the State of New Jersey is a traffic offense, and is not, in fact, a crime, as arising under the New Jersey Code of Criminal Justice, so the crime at issue was not even a crime, much less a severe one.

61.     There were no other people in the vicinity of the arrest besides the named Defendants and the Plaintiff, as Plaintiff's arrest took place on the shoulder of a busy highway, so Plaintiff could

not have posed a threat to any third parties. Furthermore, the body camera footage shows that Plaintiff was docile, respectful, and cooperative with the Defendants up until the time Defendants attempted to handcuff Plaintiff, and even then, Plaintiff did not pose a threat as he was not violent with the Defendants – he was not flailing his arms or lashing out, he was not kicking, he was not spitting – rather, he simply became rigid.

62.     While Plaintiff did passively resist by becoming rigid and making it a little more difficult for Defendants to handcuff him, at no time did he ever become violent or actively resist the arrest.

63.     The force Defendants used was outrageously disproportionate to the amount of force needed to effectuate the arrest, and the individual officers were in no danger, as there were four officers present arresting a non-violent man.

64.     The conduct of Defendants, individually and collectively, was objectively unreasonable and in violation of Plaintiff's clearly established constitutional rights as arising under the Fourth Amendment.

65.     The conduct of the herein named Defendants, individually and collectively, as alleged, was the moving force and the proximate and actual cause of Plaintiff's aforementioned injuries.

**COUNT II**
**42 U.S.C. § 1983 – FOURTH AMENDMENT**
**FAILURE TO INTERVENE**
**As To Defendants Tpr. T.J. Anderson (#7961), Tpr. S.M. Beck (#7827), Tpr. S.R. Nickels (#8339), and Sgt. T.K. O'Connor (#6999)**

66.     Plaintiff, TOUSIANT F. SPRATLEY, realleges and incorporates by references all paragraphs contained in the Complaint thus far above, as if fully stated herein.

67.     Plaintiff makes a claim under 42 U.S.C. § 1983 for violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

68.     42 U.S.C. § 1983 provides in relevant part that:

> Every person, who under color of any statute, ordinance, regulation,
> custom or usage of any state or territory or the District of Columbia
> subjects or causes to be subjected any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges or immunities secured by the constitution and law
> shall be liable to the party injured in an action at law, suit in equity,
> or other appropriate proceeding for redress . . .

69.    At all times relevant to the allegations in this Complaint, Defendants TPR. T.J. ANDERSON (#7961), TPR. S.M. BECK (#7827), TPR. S.R. NICKELS (#8339), and SGT. T.K. O'CONNOR (#6999), were acting under color of State law, and within the course and scope of their official duties and employment in their capacity as Troopers with Defendant NEW JERSEY STATE POLICE ("NJ State Troopers").

70.    The Defendants named in this Count are "persons" under 42 U.S.C. §1983.

71.    Under the Fourth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment, Plaintiff has a clearly established constitutional right to be secure in his person as against unreasonable seizures and the use of excessive force by law enforcement officers, such as the herein named Defendants.

72.    Nonetheless, the herein named Defendants, jointly and severally, deprived Plaintiff of clearly established rights secured to him under the United States Constitution, namely, the Fourth Amendment rights to be free from unreasonable seizures and to be free from the use of excessive force against one's person.

73.    By and through the herein named Defendants engaging in acts of excessive force as more fully articulated previously in this Complaint, the Defendants were, at all times, engaging in conduct that was objectively unreasonable and clearly unconstitutional with respect to the civil rights of the Plaintiff.

74.    Each herein named Defendant was present at the scene of the violation of Plaintiff's

constitutional rights, and each herein named Defendant witnessed the use of excessive force upon Plaintiff by each other herein named Defendant.

75.     Specifically, each herein named Defendant witnessed and participated in the use of excessive force upon the Plaintiff when all herein named Defendants violently slammed Plaintiff to the ground.

76.     As articulated more fully in Count I herein, this specific use of force was unnecessary and excessive and violated Plaintiff's constitutional rights.

77.     Any reasonable law enforcement officer in the position of these Defendants would have known that the force being used against Plaintiff was objectively unreasonable and excessive given the totality of the circumstances.

78.     Each herein named Defendant had a duty to prevent the use of excessive force by each other fellow Defendant.

79.     Each herein named Defendant had a reasonable opportunity to intervene in order to prevent or mitigate injury to Plaintiff, but failed to do so, and in fact, actively participated in the excessive use of force themselves.

80.     Each herein named Defendant failed to take any action to intervene or prevent harm to Plaintiff or stop his fellow officers from violating Plaintiff's constitutional rights, and thereby proximately caused excessive force to be inflicted upon Plaintiff, resulting in injury, and thus, each herein named Defendant is jointly and severally liable for same.

81.     Any reasonable law enforcement officer in the position of the herein named Defendants would have known that the force being used against Plaintiff – especially the repeated punching to Plaintiff's face and/or head – was objectively unreasonable and excessive, and in violation of Plaintiff's constitutional rights, given the totality of the circumstances.

82.     Each herein named Defendant had a duty to intervene and prevent the use of such excessive force by their fellow trooper.

83.     Importantly, Defendant SGT. T.K. O'CONNOR (#6999) is a Sergeant unlike the other Defendant troopers, and thus, Defendant O'Connor had an even higher duty to intervene when confronted with objectively unreasonable and excessive conduct of his subordinate officers.

84.     Each herein named Defendant had a reasonable opportunity to intervene in order to prevent or mitigate injury to Plaintiff, but failed to do so, and in fact, actively participated in allowing the excessive use of force to continue.

85.     Therefore, each herein named Defendant, failed to take any action to intervene and prevent harm to Plaintiff when witnessing a violation of Plaintiff's constitutional rights, and thereby proximately caused excessive force to be inflicted upon Plaintiff, resulting in injury, and thus, each herein named Defendant is jointly and severally liable for same.

86.     This conduct of the herein named Defendants, individually and collectively, as alleged, was the moving force and the proximate and actual cause of Plaintiff's aforementioned injuries.

**COUNT III**
***MONELL* CLAIM – MUNICIPAL LIABILITY**
**FOR UNCONSTITUTIONAL CUSTOM OR POLICY**
**AS TO DEFENDANTS NEW JERSEY STATE POLICE**
**AND COL. PATRICK J. CALLAHAN**

87.     Plaintiff, TOUSIANT F. SPRATLEY, realleges and incorporates by references all paragraphs contained in the Complaint thus far above, as if fully stated herein.

88.     Under the Fourth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment, Plaintiff has a clearly established constitutional right to be secure in his person as against unreasonable seizures and the use of excessive force by law enforcement officers, such as the herein named Defendants.

89.     Defendant NEW JERSEY STATE POLICE, and its managerial employees, agents, and representatives, and Defendant COL. PATRICK J. CALLAHAN, as Superintendent of the New Jersey State Troopers, by virtue of their positions of authority and decision-making and policy-setting powers over the New Jersey State Troopers are responsible for the policies and practices of the New Jersey State Troopers, including the Trooper Defendants herein.

90.     Defendant NEW JERSEY STATE POLICE, and its managerial employees, agents, and representatives, and Defendant COL. PATRICK J. CALLAHAN have acted with reckless and deliberate indifference to the rights and liberties of Plaintiff, and have purposefully, intentionally, willfully, and knowingly maintained, enforced, and applied an unconstitutional custom, policy, and/or practice of excessive force, police brutality, and Fourth Amendment violations.

91.     This policy of excessive force is known to employees within the New Jersey State Troopers, and has, unfortunately, affected numerous persons within the State of New Jersey who interact with the New Jersey State Troopers, including in this instance, Plaintiff.

92.     As alleged above in this Complaint, several of the Defendant Troopers expressed opinions that their excessive use of force was actually justified.

93.     This apparent belief among the Defendant Troopers that violently slamming a suspect to the ground and repeatedly punching him in the head is justifiable behavior as part of normal police practice when a suspect passively resists or peacefully refuses to cooperate with the arresting officers, reflects the unconstitutional policy and practice of the New Jersey State Troopers of using excessive force in violation of the Fourth Amendment.

94.     By reason of the aforementioned unconstitutional policies and practices of the herein named Defendants, Plaintiff was deprived of his constitutional right to be free from unreasonable search and seizure and the use of excessive force by law enforcement, and further, if such an

unconstitutional policy were permitted to continue, the herein named Defendants will similarly deprive other persons within the State of New Jersey their constitutional rights as well.

**COUNT IV**
**§ 1983 VIOLATION**
***MONELL* CLAIM – MUNICIPAL LIABILITY**
**FAILURE TO TRAIN AND SUPERVISE**
**AS TO DEFENDANTS NEW JERSEY STATE POLICE**
**AND COL. PATRICK J. CALLAHAN**

95.    Plaintiff, TOUSIANT F. SPRATLEY, realleges and incorporates by references all paragraphs contained in the Complaint thus far above, as if fully stated herein.

96.    Under the Fourth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment, Plaintiff has a clearly established constitutional right to be secure in his person as against unreasonable seizures and the use of excessive force by law enforcement officers, such as the herein named Defendants.

97.    Defendant NEW JERSEY STATE POLICE, and its managerial employees, agents, and representatives, and Defendant COL. PATRICK J. CALLAHAN, as Superintendent of the New Jersey State Troopers, by virtue of their positions of authority and decision-making and policy-setting powers over the New Jersey State Troopers are responsible for the training and supervision of the New Jersey State Troopers, including the Trooper Defendants herein.

98.    Defendant NEW JERSEY STATE POLICE, and its managerial employees, agents, and representatives, and Defendant COL. PATRICK J. CALLAHAN, have failed to adequately and sufficiently train New Jersey State Troopers in the proper use of force when arresting suspects, especially when arresting non-cooperative, but non-violent suspects, such as the Plaintiff herein.

99.    This failure amounts to deliberate indifference by the herein named Defendants to the rights of persons within the State of New Jersey who interact with New Jersey State Troopers, including in this instance, Plaintiff.

100.   This failure by the herein named Defendants to adequately and sufficiently train and supervise New Jersey State Troopers employees resulted in the deprivation of Plaintiff's constitutional right to be free from unreasonable seizures and the excessive use of force by law enforcement.

101.   Additionally, this failure was part of an extensive and ongoing pattern of other such failures.

102.   For example, in Gardner v. N.J. State Police, the court denied a summary judgment motion on an excessive force claim where Donald Gardner was shot by police and suffered severe paralysis.  Civil No. 15-08982 (RBK/AMD) (D.N.J. Oct. 29, 2018).

103.   In 2003, suits by the ACLU on behalf of twelve individuals alleged excessive force claims, which the state settled by paying a total of $775,000 (Harrison v. N.J. State Police, Docket No.: 18-cv-16358) (D.N.J. Aug 1, 2019.)

104.   In 2010, a federal jury in a civil suit found an NJ state trooper used excessive force and the victim was awarded $5 million in compensatory and punitive damages: www.nj.com/news/index.ssf/2010/05/ex-tinton_fall_cop_wins_5m_law.html.

105.   In August 2013, the State Police reached a $425,000 settlement with the Bayliss family after James Bayliss was subject to excessive force: https://www.app.com/in-depth/news/investigations/watchdog/shield/2018/01/22/nj-police-brutality-cases-secret-settlements/109479668/.

106.   Maurice Gordon Jr. was shot six times and killed by a trooper on the Garden State Parkway in May 2020. A resulting lawsuit from the incident seeks $50 million in damages related to excessive force:   https://www.courierpostonline.com/story/news/2021/03/16/maurice-gordon-new-jersey-state-police-fatal-shooting-parkway-lawsuit/4714529001/.

107.    Furthermore, according to publicly reported use of force data compiled here: https://force.nj.com/database/pd-dept/njsp, from 2012 to 2016, the New Jersey State Troopers' total uses of force per year nearly doubled, and if New Jersey were required to flag officers for use of force the way that New York City does, 671 State Police Troopers would have been flagged for review over that time period.

108.    Moreover, between 2010 and 2017, the State Police settled twenty counts of lawsuits for a sum settlement or judgment of over $2.5 million, according to the Asbury Park Press: https://www.app.com/in-depth/news/investigations/watchdog/shield/2018/01/22/nj-police-brutality-cases-secret-settlements/109479668/.

109.    In December 2020, then-New Jersey Attorney General Gurbir S. Grewal announced a package of policies intended to limit the use of force, but the use of force statistics indicate that New Jersey State Police (NJSP) are using force at high rates, https://www.njoag.gov/force/. Between October 2020 and May 2022, there were 691 reported uses of force by the NJSP, in which 278 were officer initiated.

110.    The preceding eight paragraphs are merely illustrative, not a comprehensive catalogue of the constitutional violations perpetuated by the herein named Defendants. The purpose of their inclusion is simply to show that there is a pattern of constitutional violations by the herein named Defendants, resulting from their failure to train and supervise, and that the herein named Defendants had notice of this pattern of failures, as evidenced by the multitude of incidents. These incidents and others like them put the herein named Defendants on notice of the inadequacy of their training in use of force and they are proof that the herein named Defendants knew this was an ongoing problem caused by a failure to train employees in the use of force that they would encounter again, yet to date, they have not addressed it.

111.    The herein named Defendants' failure to properly train their employees was the direct and proximate cause of the Trooper Defendants use of excessive force against Plaintiff in violation of his constitutional rights. This and other similar constitutional violations stretch back years and extend until the present day. This pattern is a direct result of the herein named Defendants' failure to train their employees in the proper use of force.

**COUNT V**
**<u>VIOLATION OF NEW JERSEY CIVIL RIGHTS ACT, N.J.S.A 10:6-2(c)</u>**
**As To All Defendants**

112.    Plaintiff, TOUSIANT F. SPRATLEY, realleges and incorporates by references all paragraphs contained in the Complaint thus far above, as if fully stated herein.

113.    <u>N.J.S.A.</u> § 10:6-2(c), states, in pertinent part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

114.    Defendants have violated Plaintiff's constitutionally-protected rights in that Defendants, while acting under color of State law, deprived Plaintiff of the privileges and immunities secured to him by the Fourth Amendment of the United States Constitution, particularly, his right to be secure in his person as against unreasonable seizures and the use of excessive force by law enforcement officers, such as the herein named Defendants.

115.    Plaintiff's rights under the Fourth Amendment are rights, privileges, or immunities within the meaning of <u>N.J.S.A.</u> § 10:6-2(c).

116.    As a result of the objectively unreasonable, inappropriate, and excessive use of force

19

Defendants TPR. T.J. ANDERSON (#7961), TPR. S.M. BECK (#7827), TPR. S.R. NICKELS (#8339), and SGT. T.K. O'CONNOR (#6999) implemented against Plaintiff while acting under color of State law, and within the course and scope of their official duties and employment in their capacity as Troopers with Defendants NEW JERSEY STATE POLICE and under the supervision of Defendant COL. PATRICK J. CALLAHAN ("NJ State Troopers") all Defendants have violated Plaintiff's constitutionally-protected rights.

117.    As a direct and proximate result of the unlawful conduct of the Defendants named in this Complaint and as alleged elsewhere herein, Plaintiff was deprived of his free exercise and enjoyment of same, and further, was caused to sustain significant bodily injury of both a temporary and permanent nature.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff TOUSIANT F. SPRATLEY, prays for relief as to all counts as follows:

1) For judgement against the Defendants jointly, severally, and alternatively, for general, compensatory, punitive, and exemplary damages, with interest;

2) Damages pursuant to N.J.S.A. § 10:6-2(e);

3) For attorneys' fees, litigation expenses, and costs incurred in connection with this action from Defendants pursuant to 42 U.S.C. § 1988;

4) For such other further relief as the Court may deem equitable and just.


## DEMAND FOR JURY TRIAL

Plaintiff TOUSIANT F. SPRATLEY demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: <u>July 15, 2022</u>          LENTO LAW GROUP, P.C.

_____
TERRELL A. RATLIFF, ESQUIRE
NJ State Bar No. 017852011
3000 ATRIUM WAY – SUITE 200
MOUNT LAUREL, NEW JERSEY 08054
 (T) (856) 652-2000
(F) (856) 375-1010
taratliff@lentolawgroup.com
Attorney for Plaintiff
TRIAL COUNSEL


_____
SAMUEL D. JACKSON, ESQUIRE
ATTORNEY ID: 130452017
3000 ATRIUM WAY – SUITE 200
MOUNT LAUREL, NEW JERSEY 08054
(T) (856) 652-2000
(F) (856) 375-1010
sdjackson@lentolawgroup.com
Attorney for Plaintiff
TRIAL COUNSEL